# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DWIGHT BACON (#556894)**

**VERSUS**

**MAJOR BENJAMIN ZERINGUE, ET AL.**

**CIVIL ACTION**

**NO. 16-220-JWD-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on June 21, 2017.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DWIGHT BACON (#556894)**

**VERSUS**

**MAJOR BENJAMIN ZERINGUE, ET AL.**

**CIVIL ACTION**

**NO. 16-220-JWD-RLB**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on Motion to Dismiss filed on behalf of defendants Major Benjamin Zeringue and Lt. Luther Montandon (R. Doc. 14). The motion is opposed. *See* R. Doc. 15.

The *pro se* plaintiff, an inmate incarcerated at Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against Major Benjamin Zeringue, Lt. Luther Montandon, "Col. Whitker", and "Maj. Smith", complaining that his constitutional rights have been violated through excessive force, and failure to protect him from the use of excessive force. The plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

Defendants Zeringue and Montandon first move to dismiss pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure for failure to timely perfect service. The instant motion seeks dismissal of the plaintiff's claims asserted against defendants Zeringue and Montandon, contending that because service of process was not effected within the timeframe for service mandated by Rule 4(m) of the Federal Rules of Civil Procedure,[1] the plaintiff's claims asserted against defendants Zeringue and Montandon should be dismissed.

---

[1] The defendants erroneously refer to the timeframe set forth in a prior version of Rule 4.

The plaintiff's original Complaint and Motion to Proceed *in Forma Pauperis* were filed on or about April 14, 2016. *See* R. Docs. 1 and 2. After a protracted period, the Court determined that the plaintiff was entitled to proceed *in forma pauperis* and was not required to pay an initial partial filing fee. *See* R. Docs. 3, 4, 5, 6, and 8. Inasmuch as the plaintiff was proceeding *pro se* in this case, the Court, pursuant to an Order dated August 23, 2016 (R. Doc. 9), directed the United States Marshal's Office to serve the defendants herein, wherever found. On September 12, 2016, service was effected upon defendants Zeringue and Montandon, *see* R. Doc. 10, and said defendants have responded with the instant Motion to Dismiss.

Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, "[i]f a defendant is not served within 90 days after the complaint is filed, the court ... must dismiss the action without prejudice against that defendant or order that service be made within a specified time." This Rule further provides, however, that "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."

A determination regarding whether a plaintiff has made a sufficient showing of good cause "is necessarily fact-sensitive" and depends upon the particular circumstances of the case. *Lindsey v. United States Railroad Retirement Board,* 101 F.3d 444, 446 (5th Cir. 1996). At a minimum, in order to show good cause, "the plaintiff must demonstrate at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually do not suffice." *Id., quoting Peters v. United States,* 9 F.3d 344, 345 (5th Cir. 1993). A district court retains the discretion to extend the time for service even in the absence of good cause. *See Thompson v. Brown,* 91 F.3d 20, 21 (5th Cir. 1996). Further, it may be an abuse of discretion for the Court to dismiss a defendant, even in the absence of good cause, where the effect of such dismissal would be a dismissal with prejudice

because of the running of the applicable limitations period. *See Millan v. USAA General Indemnity Company,* 546 F.3d 321, 325–26 (5th Cir. 2008).

In the instant case, good cause exists for the plaintiff's failure to timely effect service. As a *pro se* litigant, the plaintiff could not effect service on the defendants until the Court determined his pauper status and issued an order appointing the United States Marshal's Office for service. The record does not contain any evidence of dilatoriness or fault on the part of the plaintiff, nor do the defendants assert that the same has occurred. As such, good cause exists for the untimely service in this matter and the defendants' Motion to Dismiss (R. Doc. 14) should be denied in this regard.

Furthermore, the Court retains the discretion to extend the time for service even in the absence of good cause. Additionally, inasmuch as a dismissal of defendants Zeringue and Montandon at this time would likely operate as a dismissal with prejudice (because of the running of the applicable limitations period), the Court's authority to dismiss these defendants is limited. It has generally been held that "dismissal with prejudice is warranted only where a clear record of delay or contumacious conduct by the plaintiff exists and a lesser sanction would not better serve the interests of justice. *Millan v. USAA General Indemnity Company, supra,* 546 F.3d at 326 (internal quotations marks omitted). The delay must be longer than a few months and "must be characterized by significant periods of total inactivity." *Id.* at 327 (internal quotation marks omitted). *See also McGrew v. McQueen,* 415 Fed. Appx. 592, 596 (5th Cir. 2011). Dismissals with prejudice are generally reserved for "egregious and sometimes outrageous delays" by the plaintiff that threaten the integrity of the judicial process and often prejudice the defense. *Millan,* 546 F.3d at 327. "[I]t is not a party's negligence—regardless of how careless, inconsiderate, or understandably exasperating—that makes conduct contumacious;

instead it is the stubborn resistance to authority which justifies a dismissal with prejudice." *Id. (internal quotation marks omitted).* When the Fifth Circuit has affirmed dismissals with prejudice, it has generally found at least one of three aggravating factors: (1) delay caused by the plaintiff himself and not his attorney; (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct. *Id.* at 326. In the instant matter, there is no such record of delay or contumacious conduct by the plaintiff or actual prejudice to the defendants.

Defendants Zeringue and Montandon next seek dismissal on jurisdictional grounds, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, of the plaintiff's claim against them in their official capacities. In this regard, the defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, in *Hafer v. Melo,* 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id*. at 25. Accordingly, the plaintiff's claims asserted against defendants Zeringue and Montandon, in their official capacities, for monetary damages are subject to dismissal. In contrast, the plaintiff's claims for monetary damages asserted against these defendants in their individual capacities remain viable because a claim against a state official in an individual capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state. *Id*. at 29. The plaintiff's claim for injunctive relief asserted against defendants Zeringue and Montandon in their official capacities also remains viable because such a claim is not treated

as a claim against the state. *Will v. Michigan Department of State Police*, *supra*, 491 U.S. at 71 n.10. Of course, the plaintiff must prove a deprivation of a constitutional right to obtain any relief.

Turning to the plaintiff's claims that are not subject to dismissal on the basis of Eleventh Amendment immunity, defendants Zeringue and Montandon next assert, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that the plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, *supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id*. at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a

*pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Id*. (citation omitted). Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

In his Complaint as amended, the plaintiff alleges the following. On October 21, 2015, defendant Montandon conducted a shake down of the plaintiff. No contraband was found, but defendant Montandon accused the plaintiff of being intoxicated. The plaintiff then left the area with the intent of informing the warden that he was being harassed. When the plaintiff arrived at the warden's office he found "Col. Whitker" and defendant Zeringue near the office. Defendant Montandon was behind the plaintiff.

The plaintiff began to explain the situation to "Col. Whitker" while defendant Montandon spoke to defendant Zeringue. Before the plaintiff could finish speaking to "Col. Whitker," defendant Zeringue "slammed" the plaintiff on the ground and told the plaintiff that "he been waiting to send me to Camp J." (R. Doc. 1 at 5). The plaintiff was then restrained with his arms behind his back secured by handcuffs. As he was being escorted by "Col. Whitker" and defendant Zeringue, defendant Zeringue tripped the plaintiff, causing him to fall on a gate and then on the ground. "Maj. Smith" picked the plaintiff up, and defendant Zeringue then tried to cause the plaintiff's head to contact a wall but was stopped by "Col. Whitker."

Defendant Zeringue and "Maj. Smith" then began to escort the plaintiff to the treatment center due to a cut above the plaintiff's left eye. As they approached the back door, defendant Zeringue tripped the plaintiff again causing him to fall on the gate and then the ground. The plaintiff was treated and transferred to lockdown. The next day he declared himself a medical

emergency because his head, shoulders, right elbow, knees, and wrists were bleeding. The plaintiff was not seen by a doctor for 105 days, and had not received medical treatment as of the time of the filing of his original Complaint.

In response to the plaintiff's allegations, the defendants have asserted that they are entitled to qualified immunity in connection with the plaintiff's claims. The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.*

Undertaking the qualified immunity analysis, the Court finds that the defendants' motion should be granted in part. Specifically, the Court concludes that the plaintiff's claim against defendant Montandon, regarding the allegedly false disciplinary charges, should be dismissed.

As to defendant Montandon, the plaintiff complains regarding the issuance of false disciplinary charges levied against him on October 21, 2015. This claim, however, fails to state a claim of federal constitutional dimension cognizable under 42 U.S.C. § 1983. The law is clear that the mere issuance of one or more false disciplinary reports and the imposition of resulting

punishment, without more, does not amount to a constitutional violation. *See Collins v. King*, 743 F.2d 248, 253-54 (5th Cir. 1984).

The Court now turns to plaintiff's claim of excessive force against defendant Zeringue. A use of force by a prison official is excessive and violates the Eighth Amendment to the United States Constitution only when such force is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Not every malicious or malevolent action by a prison guard gives rise to a federal cause of action, however, and the Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind." *Hudson v. McMillian, supra*, 503 U.S. at 10, *quoting Whitley v. Albers*, 475 U.S. 312, 327 (1986). The fact that an inmate may have sustained only minimal injury, however, does not end the inquiry, and an inmate who has been subjected to gratuitous force by prison guards "does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy, supra*, 559 U.S. at 38. Notwithstanding, the Court may consider the extent of injury, if any, as potentially relevant to a determination whether an alleged use of force was excessive under the circumstances. In addition, other factors that may be considered in determining whether an alleged use of force has been excessive include the perceived need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response. *Hudson v. McMillian, supra*, 503 U.S. at 7.

Applying the foregoing standard and accepting the allegations of the plaintiff's Complaint as true for the purposes of evaluating the instant Motion to Dismiss, the Court finds that the plaintiff's Complaint states an excessive force claim against defendant Zeringue. The allegations of the plaintiff's Complaint reveal no reason for defendant Zeringue to slam the plaintiff to the ground in order to place him in handcuffs. The allegations likewise reveal no reason for defendant Zeringue to twice trip the plaintiff, while his hands were restrained behind his back, causing him to fall. Thus, nothing in the plaintiff's Complaint indicates that defendant Zeringue's actions were undertaken in a good faith effort to maintain or restore discipline. Rather, the allegations of the plaintiff's Complaint portray a malicious use of force. As such, the defendants' Motion should be denied in this regard.

The defendants next assert that the plaintiff is not entitled to seek compensatory damages because he has not alleged that he suffered any physical injury as a result of the alleged use of excessive force. Pursuant to 42 U.S.C. § 1997e(e), a prisoner plaintiff is barred from the receipt of compensatory damages for mental or emotional injury in the absence of some showing of physical injury. In the instant matter the plaintiff alleges either that he sustained a cut over his left eye or a cut over his left eye opened as a result of the alleged excessive use of force by defendant Zeringue. The plaintiff also alleges to have suffered injuries to his shoulders, right elbow, knees, and wrists. Accordingly, the defendants' Motion should be denied in this regard.

Finally, to the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this court over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over

which it had original jurisdiction, or for other compelling reasons.  28 U.S.C. § 1367.  In the instant case, given the Court's recommendations and the nature of the plaintiff's remaining federal claims, the Court finds that the plaintiff's state law claims will substantially predominate over the claims over which the district court has original jurisdiction.  Accordingly, the Court further recommends that the exercise of supplemental jurisdiction be declined.

## RECOMMENDATION

It is the recommendation of the magistrate judge that the defendants' Motion to Dismiss (R. Doc. 14) be granted in part, dismissing any claims against defendants Zeringue and Montandon in their official capacities for monetary damages.  It is further recommended that the plaintiff's claim against defendant Montandon be dismissed with prejudice.  It is further recommended that the defendants' Motion to Dismiss be denied as to the plaintiff's excessive force claim against defendant Zeringue, and the plaintiff's request for compensatory damages.  It is further recommended that the Court decline the exercise of supplemental jurisdiction in connection with the plaintiff's potential state law claims.

Signed in Baton Rouge, Louisiana, on June 21, 2017.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**