UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**DWIGHT BACON (#556894)**

**VERSUS**

**MAJOR BENJAMIN ZERINGUE, ET AL.**

**CIVIL ACTION**

**NO. 16-220-JWD-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on January 19, 2018.

_____
RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DWIGHT BACON (#556894)

VERSUS

MAJOR BENJAMIN ZERINGUE, ET AL.

CIVIL ACTION

NO. 16-220-JWD-RLB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the parties' Cross Motions for Summary Judgment (R. Docs. 50, 51, and 53).

The *pro se* plaintiff, an inmate incarcerated at Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against Major Benjamin Zeringue, Lt. Luther Montandon, Col. Antoine Whitaker and Major William Smith complaining that his constitutional rights have been violated through excessive force, and failure to protect him from the use of excessive force. The plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

Defendant Major Benjamin Zeringue moves for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, various discovery requests and responses, his own Affidavit and the Affidavit of Major Carl Smith. The plaintiff opposes the defendant's Motion relying upon the pleadings, and a copy of a disciplinary report dated October 23, 2015, a copy of an accident/injury report dated October 23, 2015, various photographs, and excerpts from his medical records.

The plaintiff moves for summary judgment relying upon the pleadings, his own Declaration made under penalty of perjury, disciplinary reports dated October 23, 2015, November 8, 2010, December 1, 2010, and December 17, 2010, various discovery requests and

responses, excerpts of ARP "LSP-2015-3419," hobbycraft receipts dated April 26-27, 2014, a suspension record, an accident/injury report dated October 23, 2015, excerpts of the plaintiff's medical records, and various photographs. Defendant Zeringue opposes the plaintiff's Motion relying upon the pleadings, his own Affidavit, the Affidavit of Carl Smith, various discovery responses and requests, and a certified copy of APR "LSP-2015-3331."

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the

evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint as amended, the plaintiff alleges the following. On October 21, 2015, defendant Montandon conducted a shake down of the plaintiff. No contraband was found, but defendant Montandon accused the plaintiff of being intoxicated. The plaintiff then left the area with the intent of informing the warden that he was being harassed. When the plaintiff arrived at the warden's office he found defendant Whitaker and defendant Zeringue near the office. Defendant Montandon was behind the plaintiff.

The plaintiff began to explain the situation to defendant Whitaker while defendant Montandon spoke to defendant Zeringue. Before the plaintiff could finish speaking to defendant Whitaker, defendant Zeringue "slammed" the plaintiff on the ground and told the plaintiff that "he been waiting to send me to Camp J." (R. Doc. 1 at 5). The plaintiff was then restrained with his arms behind his back secured by handcuffs. As he was being escorted by defendant Whitaker and defendant Zeringue, defendant Zeringue tripped the plaintiff, causing him to fall on a gate and then on the ground. Defendant Smith picked the plaintiff up, and defendant Zeringue then tried to cause the plaintiff's head to contact a wall but was stopped by defendant Whitaker.

Defendant Zeringue and defendant Smith then began to escort the plaintiff to the treatment center due to a cut above the plaintiff's left eye. As they approached the back door, defendant Zeringue tripped the plaintiff again causing him to fall on the gate and then the ground. The plaintiff was treated and transferred to lockdown. The next day he declared himself

a medical emergency because his head, shoulders, right elbow, knees, and wrists were bleeding. The plaintiff was not seen by a doctor for 105 days, and had not received medical treatment as of the time of the filing of his original Complaint.

In response to the plaintiff's allegations, defendant Zeringue asserts that he is entitled to qualified immunity in connection with the plaintiff's claims. Specifically, defendant Zeringue contends that the plaintiff's allegations and evidentiary showing fail to show the existence of a genuine issue of disputed fact relative to any alleged violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas*

*Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.[1]

Undertaking the qualified immunity analysis with respect to the plaintiff's claims of the use excessive force on October 21, 2015, the Court finds that the cross motions for summary judgment should be denied. Specifically, the Court finds that there is a disputed question of material fact regarding the objective reasonableness of the use of force on October 21, 2015.

A use of force by a prison official is excessive and violates the Eighth Amendment to the United States Constitution only when such force is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Not every malicious or malevolent action by a prison guard gives rise to a federal cause of action, however, and the Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind." *Hudson v. McMillian, supra*, 503 U.S. at 10, *quoting Whitley v. Albers*, 475 U.S. 312, 327 (1986). The fact that an inmate may have sustained only minimal injury, however, does not end the inquiry, and an inmate who has been subjected to gratuitous force by prison guards "does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy, supra*, 559 U.S. at 38. Notwithstanding, the Court may consider the extent of injury, if any, as potentially relevant to a determination whether an alleged use of force was excessive under the circumstances. In addition, other factors that may be

---

[1] The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial", the Court in *Pearson* leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

considered in determining whether an alleged use of force has been excessive include the perceived need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response. *Hudson v. McMillian, supra*, 503 U.S. at 7.

Applying the foregoing standard, the Court finds that there is a disputed question of material fact in this case regarding the objective reasonableness of defendant Zeringue's use of force on October 21, 2015. In response to the plaintiff's allegations, the defendants have introduced evidence reflecting that, at approximately 3:35 p.m. on the referenced date, defendant Zeringue was notified by Lt. Montandon that the plaintiff was believed to be intoxicated. Lt. Montandon escorted the plaintiff to defendant Zeringue who noticed that the plaintiff's speech was slurred and his behavior was erratic. Defendant Zeringue gave the plaintiff several direct verbal orders to put his hands behind his back to be restrained. The plaintiff refused, and continued to act in a bizarre and threatening manner. When defendant Zeringue attempted to restrain the plaintiff, he aggressively pulled away and began to violently swing his arms. Defendant Zeringue then utilized an arm bar move to take the plaintiff to the ground in order to gain compliance. Defendant Zeringue continued to give direct verbal orders for the plaintiff to place his hand behind his back to be restrained, and the plaintiff continued to resist in a belligerent and violent manner.

Once the plaintiff was restrained, defendant Zeringue began to escort him to the treatment center when the plaintiff became combative. The plaintiff attempted to kick defendant Zeringue below the waist numerous times, and refused all direct verbal orders to stop. Major Smith arrived to assist defendant Zeringue. The plaintiff continued to act in a bizarre and violent manner. As the plaintiff was being escorted down the walk between the A building and the

treatment center, he kicked Major Smith in the genital area, and then kicked defendant Zeringue's right knee. As defendant Zeringue bent down, the plaintiff kicked the left side of his face. The plaintiff was given several direct verbal orders to stop and he refused to comply. Defendant Zeringue then took the plaintiff to the ground to gain compliance. The plaintiff was then taken to the treatment center where he was kept for monitoring and treatment for side effects of smoking synthetic marijuana.

In support of his Motion for Summary Judgment, the plaintiff states in his Declaration under penalty of perjury that as he exited the hobby shop, Lt. Montandon called him over for a shakedown.[2] Lt. Montandon then accused the plaintiff of being drunk. The plaintiff left to speak to the warden, and as he approached the warden's office, Col. Whitaker and defendant Zeringue were standing nearby. When the plaintiff approached Col. Whitaker, defendant Zeringue jumped off his bike, grabbed the plaintiff from behind, and slammed him to the ground. As defendant Zeringue was handcuffing the plaintiff he stated that he had been waiting to send the plaintiff to Camp J.

The plaintiff was restrained and as defendant Zeringue was escorting him off the walk, defendant Zeringue tripped the plaintiff and slammed him on the gate and ground resulting in a cut above the plaintiff's left eye. Major Smith assisted the plaintiff off the ground and took hold of one of the plaintiff's arms while defendant Zeringue held the other. Col. Whitaker followed behind. As the plaintiff was being escorted through the CBC and CBD, defendant Zeringue attempted to slam the plaintiff's head against a wall, but was stopped by Col. Whitaker.

The plaintiff was not intoxicated, and was unable to kick defendant Zeringue or Major Smith since his arms were being held on both sides. The plaintiff was not resisting.

---

[2] This document meets the criteria for an unsworn declaration as set forth in 28 U.S.C. § 1746, and is therefore competent summary judgment evidence.

The Court has been presented with two conflicting accounts of the complained of occurrence. The Court cannot make credibility calls between these two conflicting versions of events. Construing the facts in a light most favorable to the plaintiff, the Court finds that the evidence submitted by the plaintiff is sufficient to create a disputed question of material fact regarding the objective reasonableness of the use of force in this case. In sum, an issue of fact precludes summary judgment on the issue of the alleged use excessive force by defendant Zeringue on October 21, 2015, and the Cross Motions for Summary Judgment should be denied.

## RECOMMENDATION

It is recommended that the Cross Motions for Summary Judgment (R. Docs. 50, 51, and 53) be denied. It is further recommended that this matter be referred back to the undersigned for further proceedings as appropriate.

Signed in Baton Rouge, Louisiana, on January 19, 2018.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**